IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

IN RE:

HAMBONE DOG PROPERTIES, LLC

Debtor.

CHAPTER 11

CASE NO. 10-05375-8-SWH

**DISCLOSURE STATEMENT**
November 2, 2010

NIGLE B. BARROW, JR.
N.C. State Bar No. 7597

ATTORNEY AT LAW
Attorney for Debtor
P.O. Box 2714
Raleigh, NC 27602
(919) 834-2116

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

IN RE:

HAMBONE DOG PROPERTIES, LLC

Debtor.

CHAPTER 11

CASE NO. 10-05375-8-SWH

**DISCLOSURE STATEMENT**

Pursuant to the provisions of Section 1125(b) of the Bankruptcy Code ("Code"), the Debtor hereby submits the following information:

## I.  INTRODUCTION

### A.  Purpose of This Document

The purpose of this Disclosure Statement ("Disclosure Statement") is to provide each holder of a claim against the Debtor with adequate information about the Debtor and the Debtor's Plan of Reorganization so that each holder of a claim may make an informed decision about whether to accept or reject the Plan.  Attached hereto as **Exhibits "A"** and **"B"** are summaries of the Debtor's assets and liabilities.  A Liquidation Analysis is attached as **Exhibit "C."**  A Summary of the Plan is attached as **Exhibit "D,"** but you should rely only upon the Plan itself.

*Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.*

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case;
- Who can vote on or object to the Plan;
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan;
- Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation; and
- The effect of confirmation of the Plan.

The Plan describes:

- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed); and
- The classification of claims and interests and the treatment of the classes of claims and interests, including a description of whether each class is impaired or unimpaired.

Be sure to read the Plan as well as the Disclosure Statement. It is the Plan itself that will, if confirmed, establish your rights.

### B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

#### 1. *Time and Place of the Hearing to Confirm the Plan*

The hearing at which the Court will determine whether to confirm the Plan will be scheduled by the Court and you will receive an Order setting forth the date, time, and place.

#### 2. *Deadline for Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon the Debtor's attorney.

#### 3. *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact the Debtor's attorney at the address shown at the end of this Disclosure Statement.

### II. CLASSIFICATION AND TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

**The Debtor's Plan ("Plan"), which accompanies this Disclosure Statement, is incorporated herein by reference. Section III of the Plan describes the classification of claims and interests and the treatment of the classes of claims and interests, including a description of whether each class is impaired or unimpaired. Exhibit B hereto also describes whether or not each class of claims and interests is impaired or unimpaired.**

THE PLAN CONTEMPLATES A REORGANIZATION OF THE DEBTOR'S ASSETS AND LIABILITIES. IN ACCORDANCE WITH THE PLAN, THE DEBTOR INTENDS TO SATISFY CERTAIN CREDITOR CLAIMS FROM INCOME EARNED THROUGH THEIR CONTINUED OPERATIONS AND SALE OF PROPERTY.

The particular method for payment of each creditor is outlined in Section III of the Plan. The total of general unsecured claims as of the date of the filing of this Plan is estimated at $649,226.41. This number is based on the claims filed as of the date of the filing of the Plan, the claims scheduled by the Debtor, and estimated deficiency claims. The last day for creditors to file claims is November 12, 2010, and January 2, 2011 for government agencies.

The Debtor's liabilities will be paid according to the priorities of the Bankruptcy Code and the Orders of this Court. The specific amounts and terms of payment will be made according to the treatment of each respective creditor.

**A.     The Purpose of the Plan of Reorganization**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment that each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

**B.     Administrative Expenses and Tax Claims**

The following types of claims are addressed in the Plan:

1.   *Administrative Costs*

Administrative costs are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses may also include the value of any goods sold to the Debtor in the ordinary course of business and received within twenty (20) days before the date of the bankruptcy petition.

2.   *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding five (5) years.

**C.     Classes of Claims**

The following classes are also addressed in the Plan. The Plan describes the proposed treatment that they will receive under the Plan:

1.   *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's

4

allowed claim, the deficiency will be classified as a general unsecured claim. The specific classes are described in Section III of the Plan.

2. *Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

3. *Class of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

### III.  HISTORY AND BUSINESS STRUCTURE

A. History of Debtor. Debtor was formed on February 4, 1998. Debtor acquired a series of properties which were leased to food service providers. At the time the petition was filed, Debtor owned eight restaurants and one ice cream shop. At one time, eight of the nine properties were leased to Ham's Restaurants, Inc. ("Ham's") or other entities owned directly or indirectly by Charles Erwin. All the properties were financed by Debtor and were pledged as security for loans.

B. Events Leading to Chapter 11 Filing. Debtor experienced difficulty in collecting rents on the properties as Ham's Restaurants, Inc. and the other Erwin related entities began to experience economic difficulties. Ham's Restaurants, Inc. filed a petition in bankruptcy in the fall of 2009 and was not able to remain current on its rents. Make Sense Dining, lessor of Debtor's Lynchburg, Virginia property stopped making lease payments.

Ham's abandoned restaurants in Rocky Mount, Goldsboro, and Greenville. Ham's continued to occupy properties on Main Street in High Point, on Samet Drive in High Point, on Cone Boulevard in Greensboro, and at 1707 S. Horner Boulevard in Sanford. Ham's made no rent payments in June, July, or August.

C. Restructuring of the Debtor's Operations. Prior to filing, Debtor re-let properties in Goldsboro and at 2011 N. Main Street in High Point.

Subsequent to filing, the assets of Ham's were sold by the Trustee to RCR Marketing, LLC ("RCR"). RCR took assignment of the Ham's leases of Cone Boulevard, Samet Drive, and N. Main Street (High Point). RCR and Debtor renegotiated lease rates at the requirement of RCR to enable RCR to operate the locations profitably. RCR has continued operations of the Ham's location at 1707 S. Horner Boulevard in Sanford at a reduced rate on a month-to-month basis. Debtor has moved the Court to approve the assumption of the four leases. Debtor intends to assume the lease in Goldsboro (Uncle Yammy's), in High Point at 2011 Main Street

(Brainfreeze Six, Inc.) and the Zheng Garden lease in Sanford.

Debtor's plan provides for the marketing of the Greenville and Rocky Mount locations for sale or lease.

D. <u>Relief</u>. The Court has allowed Debtor to use cash collateral to maintain the properties, acquire insurance, and to maintain utilities on abandoned property.

## IV. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except as specified herein, all contracts which exist between the Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or heretofore been identified as leases to be assumed subject to Court approval are hereby specifically rejected; provided, however, that this provision is not intended to reject and does not reject any agreement for the renewal or the extension of any loan or funds, presently binding and in effect between the Debtor and any secured creditor. The Debtor hereby proposes to assume all leases currently in effect in which the Debtor is the lessor, except as may be otherwise specifically stated herein. Any person with a Claim arising from such rejection shall be deemed to hold an unsecured claim and shall file a proof of claim within sixty (60) days of the Effective Date or be forever barred from asserting any Claim relating to such rejection.

## V. MEANS OF IMPLEMENTATION AND EXECUTION OF PLAN

A. The Debtor proposes to make payments under the plan from funds on hand, from post-petition earnings, and from the sale of property.

B. Distributions under the Plan shall be made on the Distribution Date; provided however, that Court approved professionals may be paid as such fees and expenses are approved by the Court. Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day.

C. <u>Deficiency Claims</u>. Any secured creditor asserting a deficiency claim shall file a proof of claim within sixty (60) days of the effective date or within thirty (30) days after the determination that such deficiency claim exists, including an itemization of the principal, interest, and other costs, or be forever barred from asserting any deficiency claim and such obligation shall be deemed paid in full. In the event the Debtor obtains its Final Decree prior to the determination of any deficiency claim, such secured creditor shall inform the Disbursing Agent of such deficiency claim within the same time period. In such event, a proof of claim form shall not be required, but the secured creditor shall provide notice of such deficiency claim to the Disbursing Agent in a writing containing the same information required in a proof of claim.

D. <u>Distributions to General Unsecured Creditors</u>. When making distributions to this class, the outstanding amount of all contingent, disputed, contingent guaranty, or unliquidated claims shall be included in the calculation of any pro rata distribution to be made, but shall not be paid. Instead, the portion allocated to such claims shall be held until such time as a determination can be

made as to whether or not a deficiency claim, contingent claim, or guaranty claim exists and becomes a liquidated claim. At the time of such determination, the portion which would have been paid to such creditor shall be paid, not to exceed the percentage of claims paid to the unsecured creditors (i.e. if general unsecured creditors have received distributions totaling 20% if their allowed claims, the secured creditor shall receive 20% of its allowed deficiency claim) and thereafter, any remaining deficiency claim or guaranty claim shall be included in any future distributions to unsecured creditors.

      E.    <u>De Minimis Distributions</u>. No distribution of less than fifty dollars ($50.00) shall be required to be made to any holder of an allowed unsecured claim. Instead, the Debtor shall have the option of retaining such funds to be distributed at the time of the final distribution in accordance with the Plan.

      F.    <u>Unclaimed Property</u>. If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim and the Disbursing Agent shall not attempt to make any further distribution of such holder of the claim. Undistributed property shall be returned to the Debtor for distribution in accordance with the Plan.

      G.    <u>Preservation of Avoided Transactions for the Benefit of the Estate</u>. All transactions avoided or otherwise set aside pursuant to §§ 544, 547, 548, and/or 549, if any, shall be preserved for the benefit of the Estate pursuant to § 551 and applicable case law. Funds received from such transactions shall be distributed to creditors according to the priorities of the Code. In the case of any lien that has been avoided which encumbered certain properties of the Debtor and has since been avoided, the lien shall remain on the public record and shall remain an encumbrance upon the real property. However, all distributions made towards such deed of trust shall be distributed not to the named beneficiary of such deed of trust, but shall instead be paid to the Disbursing Agent for distribution to creditors.

      H.    The Debtor will execute and deliver all documentation to the Bankruptcy Court and to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Bankruptcy Code.

      I.    The Debtor shall take such other action as necessary to satisfy the other terms and requirements of the Plan and the Bankruptcy Code.

      J.    Except as expressly stated in the Plan, or allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code. No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.

      K.    Confirmation of this plan shall constitute a finding that the Debtor does not waive, release, or discharge, but rather retains and reserves any and all pre-petition claims and any and all post-petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all

violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548, and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of the Debtor's Plan.  Further, the Debtor retains all rights to assert and pursue all claims under 11 U.S.C. § 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

L. Administrative claims unpaid on the Effective Date will be paid from funds on hand or as the parties otherwise agree.

M. All objections to claims, fee applications, and adversary proceedings will be filed with the Court within sixty (60) days of the Effective Date; provided however, that the Debtor retains the right to object or otherwise pursue any claims against secured creditors relating to the payoff and/or satisfaction of its secured claims.

N. <u>Procedure for Payment of Professional Fees</u>.  Current Court approved professionals shall not be subject to the fee application process for services rendered post-confirmation in furtherance of implementation of the confirmed Plan.

## VI.  SIMILAR TREATMENT FOR EACH CLAIM WITHIN A CLASS

The claims stated herein, by modification, Court Order, or other legally appropriate manner, may be modified throughout the course of payment under this Plan.  The Debtor, upon full payment as called for under the notes and deeds of trust, shall be entitled to have the note marked paid and satisfied and the deed of trust canceled as a matter of record, by the Trustee, or by appropriate application to this Bankruptcy Court, and upon a showing that the full amount of the monthly payments was made by the Debtor.

## VII.  PROVISIONS GOVERNING DISTRIBUTIONS

A. <u>Delivery of Distributions in General</u>.  Distributions to holders of allowed claims shall be made: (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtor after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or (ii) is not available, (iii) at the addresses reflected in the Debtor's schedules of liabilities.

B. <u>Distribution Dates</u>.  It is the intent of this Plan that the distribution shall occur as early as practicable following the Effective Date.

## VIII.  DISCLAIMER

All parties are advised and encouraged to read this Disclosure Statement and the Plan in their entirety before voting to accept or reject the Plan or before voting on any other matter as provided for herein.

Statements made in this Disclosure Statement are qualified in their entirety by reference to the Plan itself, the Disclosure Statement, and all exhibits annexed thereto. The statements contained in this Disclosure Statement are made only as of the date hereof. No assurances exist that the statements contained herein will be correct any time hereafter.

The information contained in this Disclosure Statement is included herein for purposes of soliciting acceptances of the Plan and may not be relied upon for any purpose other than to determine how to vote on the Plan. No representations concerning the Debtor is authorized by the Debtor other than as set forth in this Disclosure Statement. Any other representations or inducements made to solicit your acceptance that are not contained in this Disclosure Statement should not be relied upon by you in arriving at your decision to accept or reject the Plan.

With respect to adversary proceedings, contested matters, other actions or threatened actions, this Disclosure Statement shall not constitute or be construed as an admission of any fact or liability, stipulation, or waiver; rather, this Disclosure Statement shall constitute statements made in connection with settlement negotiations.

This Disclosure Statement shall not be admissible in any non-bankruptcy proceeding involving the Debtor or any other party. Furthermore, this Disclosure Statement shall not be construed to be conclusive advice on the legal effects, including, but not limited to the tax effects, of the Debtor's Plan of Reorganization. You should consult your legal or tax advisor on any questions or concerns regarding the tax or other legal consequences of the Plan.

The information contained herein is not the subject of a certified audit and formal appraisals. The Debtor's records are dependent upon internal accounting methods. As a result, valuations and liabilities are estimated. Although substantial efforts have been made to be complete and accurate, the Debtor is unable to warrant or represent the full and complete accuracy of the information contained herein.

### IX.  PAYMENTS UNDER PLAN ARE IN FULL AND FINAL SATISFACTION OF DEBT

Except as otherwise provided in § 1141 of the Bankruptcy Code, or the Plan, the payments and distributions made pursuant to the Plan will be in full and final satisfaction, settlement, release, and discharge, as against the Debtor, of any and all claims against, and interests in, the Debtor, as defined in the Bankruptcy Code, including, without limitation, any Claim or Equity Interest accrued or incurred on or before the Confirmation Date, whether or not (i) a proof of claim or interest is filed or deemed filed under § 501 of the Bankruptcy Code, (ii) such Claim or Equity Interest is allowed under § 501 of the Bankruptcy Code, or (iii) the holder of such Claim or Equity Interest has accepted the Plan.

### X.  POTENTIAL MATERIAL FEDERAL TAX CONSEQUENCES

The Debtor is a limited liability company with three members.  The Debtor is a pass-through entity for federal and state income tax purposes.  As a result, any income tax liabilities arising as a result of or in connection with the execution of the Plan will flow through to the Members.

Losses reported on previous tax returns were passed through to the Members.  These losses and any refunds or tax benefits attributable thereto are personal to the Members and are not available to creditors as an asset of the Debtor.  The same is true with respect to anticipated losses for future or unfiled years.

Any of the Debtor's debts which cannot be paid in full under the Plan will be partially discharged.  As a result, the Debtor will recognize cancellation of indebtedness ("COD") income in an amount equal to the discharged debt, to the extent the accrual of such debt has generated a tax deductible expense for, or were capitalized and included in the tax basis of assets of, the Debtor.

Payments to be made under the Plan will produce the following income tax effects:

- Payment of administrative claims generally will be deductible by the Debtor, to the extent not already deducted.
- Payment of secured claims generally will not be deductible by the Debtor, as they have already been included in the basis of the assets securing the debt or cost of goods sold, or applied towards payment of previously deducted expenses.
- Payment of unsecured claims will be deductible by the Debtor to the extent (i) the payment thereof would produce a deduction outside of Chapter 11, and (ii) a deduction for the subject payment has not already been accrued.
- The Debtor will recognize income or loss on the sale of any assets sold in an amount equal to the difference between its amount realized on each sale and its adjusted basis or cost of goods sold in the subject asset(s) immediately prior to the transfer.  The amount realized will include the amount of any nonrecourse indebtedness which is eliminated as the result of a sale.

During the term of the Plan, income, gains, losses and deductions will be passed through to

the Shareholders.  Losses and deductions will generate commensurate reductions in the Shareholders' basis in their stock in the Debtor, and any net income or gain passed through to them will create basis increases.

The Debtor is a North Carolina limited liability company and the Members are North Carolina residents.  Because North Carolina income tax law follows federal income tax law, the issues discussed above applies equally to the Debtor and the Shareholders for state income tax purposes.

For federal income tax purposes, loan creditors who receive principal payments under the Plan generally will recognize capital gain or loss in an amount equal to the difference between the amount of the principal payments and their bases in their claims.  (A creditor may have a basis in its claim which is different from the face amount of the indebtedness as a result of charge-offs, or because it acquired its claim for something other than the face amount from the original lender.) Any interest payments received by creditors under the Plan will generate ordinary income to such creditors, to the extent such amounts have not already been accrued.

A loan creditor whose debt is significantly modified will be treated as having received a new debt instrument in exchange for the old one.  This will be treated as a sale or exchange of the old debt for a new instrument with a value determined under IRS rules.  This may result in the recognition of capital gain or loss by the creditor in an amount equal to the difference between the value of the new instrument and the creditor's basis in the claim.

Trade creditors of the Debtor who receive payments under the Plan will recognize federal taxable income in a manner consistent with their methods of accounting for receipts of this nature.

To the extent creditors are subject to North Carolina income tax, their treatment for state tax purposes will follow the federal treatment discussed above.  The income tax treatment of creditors in states other than North Carolina is beyond the scope of this disclosure statement.

**CIRCULAR 230 NOTICE**:  To comply with requirements imposed by the United States Treasury Department and/or IRS, any information regarding any U.S. federal tax matters contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, as advice for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.  A formal and thorough written tax opinion would first be required for any tax advice contained in this communication to be used to avoid tax related penalties.  Please consult your own tax professional.

## XI.  PROVISIONS FOR VOTING ON A PLAN

A. <u>Creditors Allowed to Vote and Deadline.</u>  Creditors holding allowed claims are entitled to vote to accept or reject the Debtor's Plan of Reorganization.  The Court has fixed a date by which ballots upon the proposed Plan must be filed with counsel for the Debtor as an agent of the Court.  Even though a creditor may not choose to vote, or may vote against the Plan, the creditor will

11

be bound by the terms and treatment set forth in the Plan if the Plan is accepted by the requisite majorities in each class of creditors and/or is confirmed by the Court. Creditors who fail to vote will not be counted in determining acceptance or rejection of the Plan. Allowance of a claim or interest for voting purposes does not necessarily mean that the claim will be allowed or disallowed for purposes of distribution under the terms of the Plan. Any claim to which an objection has been or will be made will be allowed for distribution only after determination by the Court. Such determination of allowed status may be made before or after the Plan is confirmed.

  B. <u>Voting Provisions.</u>  In order for the Plan to be accepted by the class of creditors holding general unsecured claims, creditors that hold at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in the total number of allowed claims of creditors voting on the Plan must accept the Plan. Under certain limited circumstances more fully described in 11 U.S.C. § 1129(b), the Court may confirm the Plan by a "cramdown" notwithstanding the rejection thereof by more than one-third (1/3) in amount or one-half (1/2) in number of the creditors voting on the Plan. The Debtor intends to seek confirmation under 11 U.S.C. § 1129(b) in the event any class of creditors rejects the Plan.

  C. <u>Representations Limited.</u>  No representation concerning the Debtor, particularly regarding future business operations or the value of the Debtor's assets, has been authorized by the Debtor except as set forth in this statement. You should not rely on any other representations or inducements offered to you to secure your acceptance or decide how to vote on the Plan. Any person making representations or inducements concerning acceptance or rejection of the Plan should be reported to counsel for the Debtor.

  While every effort has been made to provide the most accurate information available, the Debtor is unable to warrant or represent that all information is without inaccuracy. No known inaccuracies are set forth herein. Further, much of the information contained herein consists of projections of future performance. While every effort has been made to ensure that the assumptions are valid and that the projections are as accurate as can be made under the circumstances, the Debtor has not undertaken to certify or warrant the absolute accuracy of the projections.

  No formal appraisals have been undertaken of the Debtor's property for the purpose of preparing this Disclosure Statement. The property values which were assigned and summarized below are the Debtor's-in-Possession best estimate of the values of the property as of the time of the filing of this Disclosure Statement. However, the Debtor has sought the opinions of persons experienced in valuing property in arriving at its estimates of values. These values may differ from values placed on the property at the time of the filing of the petition for relief and the subsequent schedules.

## XII.  ACCEPTANCE AND CONFIRMATION

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan.  The confirmation hearing will be scheduled at a time and place to be determined by the Bankruptcy Court.  The confirmation hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the confirmation hearing.

At the confirmation hearing, the Bankruptcy Court will determine whether the requirements of § 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan.  These requirements include determinations by the Bankruptcy Court that (i) the Plan has classified Claims in a permissible manner; (ii) the Plan is in the "best interests" of all Creditors; (iii) the Plan is feasible; (iv) the Plan has been accepted by the requisite number and amount of Creditors in each Class entitled to vote on the Plan, or that the Plan may be confirmed without such acceptances; (v) the Plan and its proponent comply with various technical requirements of the Bankruptcy Code; (vi) the Debtor has proposed the Plan in good faith; (vii) any payments made or promised in connection with the Plan are subject to the approval of the Bankruptcy Court as reasonable; and (viii) the Plan provides specified recoveries for certain priority claims.  The Debtor believes that all of these conditions have been or will be met prior to the Confirmation hearing.

A.   **Classification of Claims**.  The Bankruptcy Code requires that a plan place each creditor's claim in a class with "substantially similar" claims.  The Debtor believes that the Plan's classification of claims complies with the requirements of the Bankruptcy Code and applicable case law.

B.   **The Best Interests Test**.  Notwithstanding acceptance of the Plan in accordance with § 1126 of the Bankruptcy Code, the Bankruptcy Court must find, whether or not any party in interest objects to Confirmation, that the Plan is in the best interests of the Creditors.  Bankruptcy courts have generally defined "best interests" as the Bankruptcy Code's requirement that, under any plan of reorganization, each member of an impaired class of creditors must receive or retain, on account of its claim, property of a value, as of the effective date of the plan, that is not less than the amount such creditor would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code.  The Debtor believes that the Plan is in the best interests of all Creditors.

To determine what the Creditors would receive if the Debtor was liquidated under chapter 7, the dollar amount that would be generated from the liquidation of the Debtor's assets in a chapter 7 liquidation case needs to be considered.  The amount that would be available for the satisfaction of Claims would consist of the Debtor's interest in the net proceeds resulting from the disposition of the Estate's assets, augmented by the Debtor's interest in the cash on hand.  The Estate's interest would be further reduced by the amount of any Secured Claims, the costs and expenses of the liquidation, and such additional Administrative Claims and Priority Claims that may result from the termination of the Debtor's business.  These calculations are set forth in a liquidation analysis attached to this Disclosure Statement.

The costs of liquidation under chapter 7 would become Administrative Claims with the highest priority against the proceeds of liquidation. Such costs would include the fees payable to a chapter 7 trustee, as well as those which might be payable to attorneys, financial advisors, appraisers, accountants and other professionals that such a trustee may engage to assist in the liquidation.

After satisfying Administrative Claims arising in the course of the chapter 7 liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred during the time the Case was pending under chapter 11, including compensation for the Debtor, attorneys, financial advisors, appraisers, accountants and other professionals retained by the Debtor.

For the reasons discussed above, the Debtor has concluded that the Plan provides Creditors with a recovery that has a present value at least equal to the present value of the distribution that such Person would receive if the Estate were liquidated under chapter 7 of the Bankruptcy Code.

**BECAUSE THE LIQUIDATION ANALYSIS AND ANY PROJECTIONS WHICH MAY BE PROVIDED BY THE DEBTOR IS BASED UPON A NUMBER OF ASSUMPTIONS AND ARE INHERENTLY SUBJECT TO SIGNIFICANT UNCERTAINTIES THAT ARE BEYOND THE DEBTOR'S CONTROL, THERE CAN BE NO ASSURANCE THAT THE LIQUIDATION VALUES WOULD, IN FACT, BE REALIZED IN THE EVENT OF A LIQUIDATION UNDER CHAPTER 7 OR THAT THE FINANCIAL PROJECTIONS WILL BE REALIZED. ACTUAL RESULTS MAY BE HIGHER OR LOWER THAN THOSE SHOWN IN THE EXHIBITS, POSSIBLY BY MATERIAL AMOUNTS.**

C.   **Feasibility of the Plan**.   Section 1129(a)(11) of the Bankruptcy Code requires a judicial determination that confirmation of the Plan will not likely be followed by liquidation or the need for further financial reorganization of the Debtor or any other successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan. The Debtor believes that the Debtor will be able to meet its obligations under the Plan.

D.   **Confirmation.**  The Plan may be confirmed if the holders of impaired Classes of Claims accept the Plan. Classes of Claims that are not impaired are deemed to have accepted the Plan. A Class is impaired if the legal, equitable, or contractual rights attaching to the Claims or interests of that Class are modified other than by curing defaults and reinstating maturities or by full payment in cash.

The Bankruptcy Code defines acceptance of a plan by a class of claims as acceptance by the holders of two-thirds in dollar amount and a majority in number of allowed claims in that class. This calculation includes only those holders of claims who actually vote to accept or reject the Plan. Votes on the Plan are being solicited only from holders of Allowed Claims in impaired Classes who are expected to receive distributions.

In the event that an impaired Class does not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan at the Debtor's request if (i) all other requirements of § 1129(a) of the Bankruptcy Code are satisfied, and (ii) as to each impaired Class that has not accepted the Plan, the

14

Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such non-accepting Class. **THE DEBTOR BELIEVES THAT THE PLAN IS IN THE BEST INTERESTS OF ALL CREDITORS AND STRONGLY RECOMMENDS THAT ALL PARTIES ENTITLED TO VOTE CAST THEIR BALLOTS IN FAVOR OF ACCEPTING THE PLAN.** Nevertheless, the Debtor has requested that the Bankruptcy Court confirm the Plan over the rejection of any non-accepting Class in the event all other elements of § 1129(a) of the Bankruptcy Code are satisfied.

A plan "does not discriminate unfairly" if the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are intertwined with those of the non-accepting class, and no class receives payments in excess of that which it is legally entitled to receive. The Debtor believes that, under the Plan, all holders of impaired Claims are treated in a manner that is consistent with the treatment of other holders of Claims with which any of their legal rights are intertwined. Accordingly, the Debtor believes the Plan does not discriminate unfairly as to any impaired class of Claims.

The condition that a plan be "fair and equitable" generally requires that an impaired class that has not accepted the plan must receive certain specified recoveries, as set forth in § 1129(b)(2) of the Bankruptcy Code. The Debtor believes that the Plan meets the thresholds specified in this section of the Bankruptcy Code.

## XIII.  EFFECT OF CONFIRMATION

A. Except as otherwise provided in the Plan, the confirmation of the Plan vests all of the property of the estate in the Debtor.

B. <u>Injunction</u>. As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a claim, equity interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to § 1141 of the Code, are enjoined from taking any of the following actions on account of any such claims, equity interests, debtors or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation order. Notwithstanding the foregoing, the Plan does not release or waive any claims it may have against any party in interest.

## XIV.  RECOMMENDATION AND CONCLUSION

**THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE GREATEST RECOVERY TO CREDITORS AND IS IN THE BEST INTEREST OF CREDITORS, THEREFORE, THE DEBTOR RECOMMENDS THAT ALL CREDITORS VOTE TO ACCEPT THE PLAN.**

## XV.  OTHER SOURCES OF INFORMATION AVAILABLE TO CREDITORS AND PARTIES IN INTEREST

Additional motions, affidavits, orders or other documentation which might be of interest to any holder of a claim against the Debtor in this proceeding are shown on the docket sheet maintained by the Clerk's office.  Copies of the docket sheet and actual items can be obtained from the office of the Clerk of the Bankruptcy Court:

Stephanie Edmondson, Clerk
U.S. Bankruptcy Court
1760-A Parkwood Boulevard
Wilson, NC  27893
(252) 237-0248

## XVI.  DISCHARGE

Upon completion of payments, the Debtor and the Estate will be discharged from all Claims and Liens, including Liens expressly provided for in the Plan.  The discharge will be fully effective against all Creditors regardless of whether they have voted to accept or reject the Plan and regardless of whether the Plan is confirmed by consent or by resort to the provisions of section 1129(b) of the Bankruptcy Code.  However, even though no discharge will be entered until all payments are completed, the Debtor will seek to have the case closed upon substantial consummation under § 1101(2).  Further, the Debtor will seek to have the case automatically re-opened pursuant to § 350(b) without the payment of a fee, upon the filing and service on all creditors and the Bankruptcy Administrator, of a Notice of Completion of Plan Payments and Request for Entry of Discharge, allowing all parties 21 days to file a response.

The Confirmed Plan shall not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Bankruptcy Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

(This space intentionally left blank.)

Respectfully submitted, this the 2nd day of November, 2010.

/s/ Nigle B. Barrow, Jr.
Nigle B. Barrow, Jr.
Attorney for Debtor, Hambone Dog Properties
NC State Bar No. 7597
P. O. Box 2714
Raleigh, NC 27602-2714
Telephone: 919-834-2116

HAMBONE DOG PROPERTIES, INC.
By: /s/ Clyde K. Atkins
Clyde K. Atkins, Member Manager