IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

IN RE:

                                CHAPTER 11

HAMBONE DOG PROPERTIES, LLC

                            Case No.  10-05375-8-SWH

            Debtor.


**AMENDED PLAN OF REORGANIZATION**
December 16, 2010


                                      NIGLE B. BARROW, JR.
                                      N.C. State Bar No. 7597

                                      ATTORNEY AT LAW
                                      Attorney for Debtor
                                      P.O. Box 2714
                                      Raleigh, NC 27602
                                      (919) 834-2116

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

IN RE:

HAMBONE DOG PROPERTIES, LLC

     Debtor.

CHAPTER 11

Case No.  10-05375-8-SWH

## AMENDED PLAN OF REORGANIZATION

Pursuant to the provisions of Section 1123 of the Bankruptcy Code (11 U.S.C. § 1123), the Debtor hereby submits the following Plan of Reorganization:

## I.  SUMMARY OF PLAN

The Plan contemplates a reorganization and continuation of the Debtor's business.  In accordance with the Plan, the Debtor intends to satisfy certain creditor claims from income earned through continued operations and from the sale of property.

The Debtor's Plan of Reorganization is based on the Debtor's belief that the interests of its creditors will be best served if it is allowed to reorganize its debts.

The Debtor's liabilities will be paid according to the priorities of the Bankruptcy Code and the Orders of this Court. The specific amounts and terms of payment will be made according to the treatment of each respective creditor. A summary of the terms proposed for secured creditors was attached to the Disclosure Statement as Exhibit "D." Exhibit "D" is meant to be a summary of the treatments proposed for secured creditors only. Creditors are encouraged to read the full text of the Plan for the full treatment of each creditors' claim. In the event of a conflict between the Disclosure Statement, including all exhibits attached thereto and the Plan, the terms of the Plan will control.

## II.  DEFINITIONS

1.  "ADMINISTRATIVE CLAIM" shall mean any Claim entitled to priority under § 507(a)(1) of the Bankruptcy Code.

2.  "ALLOWED" shall mean (a) any Claim against the Debtor, proof of which was timely filed or by order of the Bankruptcy Court was not required to be filed; or (b) any Claim that has been listed in the Schedules as liquidated in amount and not disputed or contingent; and in each such case in (a) or (b) above, as to which either (1) no objection to the allowance thereof or other similar pleading has been filed within the applicable period, or (2) an objection or other

similar pleading has been filed and the Claim has been allowed by a Final Order of the Bankruptcy Court, but only to the extent so allowed.

3. "BANKRUPTCY CODE" shall mean the United States Bankruptcy Code, Title ll of the United States Code, as enacted in 1978 and thereafter amended.  References to "§ ___" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. § 101, et seq.

4. "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to Chapter 11 cases.

5. "CLAIM" shall mean a duly listed or a timely filed claim which is allowed in order to be paid by the Court.

6. "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article III of the Plan.

7. "CONFIRMATION DATE" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. § 1129.

8. "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. § 1129.

9. "CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

10. "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

11. "CREDITORS" shall mean all creditors of the Debtor holding claims for unsecured debts, liabilities, demand or claims of any character whatsoever.

a. "DEBTOR" shall mean the Debtor (or Debtors, if more than one) identified on the first page of this Plan.

12. "DISBURSING AGENT" shall mean Nigle B. Barrow, Jr.,  attorney, or that person selected by the Court who shall perform the duties and have the rights and obligations described herein.

13. "DISCLOSURE STATEMENT" shall mean the Disclosure Statement describing this Plan prepared in accordance with § 1125 and approved by order of the Bankruptcy Court, to be distributed to the holders of claims whose votes with respect to this Plan are to be solicited.

14. "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtor as disputed, contingent or unliquidated, or (b) that is scheduled by the Debtor, or proof of which has been filed with the Bankruptcy Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order.

15.  "DISTRIBUTION DATE" shall mean the date on which distributions are to be made under the Debtor's Plan.

16.  "EFFECTIVE DATE" shall be that date on which the Order Confirming Plan becomes final and non-appealable.

17.  "FINAL DECREE" shall mean the order of this Court pursuant to Bankruptcy Rule 3022 closing this case.

18.  "FINAL ORDER" shall mean an order of the Court that has been entered and either (a) the time for appeal from such entered order has expires; or (b) any appeal that has been timely filed has been dismissed or otherwise finally determined.

19.  "GENERAL UNSECURED CLAIM" shall mean any claim, whether or not liquidated or contingent, other than a priority claim, administrative claim, or secured claim.

20.  "IMPAIRED" classes of creditors are those whose claims or interests are altered by the Plan, or who will not receive under the Plan the allowed amount of their claims in cash as of the "Effective Date" (as defined in the Plan).

21.  "PETITION DATE" shall mean the date upon which the Debtor filed the voluntary Chapter 11 petition.

22.  "PLAN" shall mean this Plan of Reorganization in its present form or as it may be amended or modified.

23.  "PRIORITY CLAIM" shall mean any claim to the extent entitled to priority in payment under § 507.

24.  "PRO-RATA" shall mean the amount of cash or property to be paid or distributed to a claimant with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated class to the aggregate dollar amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

25.  "SALE" shall mean the sale of certain assets of the Debtor under this Plan.

26.  "SALE PROCEEDS" means the proceeds of the Sale of certain assets of the Debtor under this Plan, after payment of all reasonable and ordinary closing costs, including but not limited to ad valorem taxes, commissions, and any other costs permitted under § 506(c) of the Code.

27.  "SECURED CREDITORS" shall mean all creditors who hold a lien, security interest or any other encumbrances which have been properly perfected as required by law with respect to property owned by the Debtor, to the extent of the value of the collateral.

28.  "SUBSTANTIAL CONSUMMATION" shall mean the time the reorganized Debtor has commenced the distribution of initial Plan payments to all creditor classes.

29.  "TAX CLAIM" shall mean any claim entitled to priority in treatment pursuant to § 507(a)(8).

### III.  CLASSIFICATION AND TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

The Debtor classifies the following classes of claims, indicating whether said class is impaired or unimpaired, and proposes the following treatment:

**Class 1 - Administrative Costs:**

1.  Description of Claims.  Class 1 consists of claims for any cost or expense of administration pursuant to §§ 503, 506, and 507 of the Bankruptcy Code.

The following claims of professionals will be paid subject to Court approval:

Nigle B. Barrow, Jr. - Attorney for Debtor - To be determined by the Court

2.  Impairment.  This class will be impaired.

3.  Treatment.  Administrative costs and expenses approved by the Court shall be paid in cash and in full including accruals to date of payment within the later of ten days from the Effective Date of the Plan or approval of such claims.

In the event that funds are not available to pay such costs and expenses within ten (10) days of the Effective Date of the Plan, then each holder who agrees to receive payments over time shall receive payments from the Debtor following the Effective Date from the Debtor's cash flow until paid in full.  Such claims remaining unpaid ten days following the Effective Date shall accrue interest at a rate of six percent (6%) per annum.

**Class 2 - Ad Valorem Taxes**

1.  Description of Claims.  Class 2 consists of claims for taxes owed by the Debtor to any city, county, or other municipality or taxing entity entitled to tax the property of the Debtor based upon the value of the property assessed.  The Debtor is aware of the following claim(s) in this Class:

| Creditor's Name, Mailing Address Including Zip Code and Account Number | Date Claim was Incurred | Amount of Claim | Amount Entitled to Priority, if any |
|---|---|---|---|

| | | | |
|---|---|---|---|
| Nash County Tax Collector<br>120 W. Washington<br>Suite 2058<br>Nashville, NC  27856<br>Acct No. 161129 | 1-5-10<br>Property Tax | 1636.00 | 1636.00 |
| Pitt County Tax Collector<br>111 S. Washington St<br>P. O. Box 875<br>Greenville, NC  27875<br>Acct No. 0000292998 | 1-5-10<br>Property tax | 3500.00 | 3500.00 |
| City of Rocky Mount<br>Tax Collector<br>P. O. Box 1180<br>Rocky Mount, NC  27802<br>Acct No. 385118300859 | 1-5-10<br>Property tax | 1333.00 | 1333.00 |
| City of Lynchburg, Va<br>Tax Collector<br>P. O. Box 8000<br>Lynchburg, VA | 1-5-10 | 22,520.00<br>(Stay to be lifted or property conveyed ) | 22,520.00 |

2.  Impairment.  This class will be unimpaired.

3.  Treatment.  Debtor and Carolina Bank have agreed to the lifting of the stay in respect to Debtor's Lynchburg, VA property.  The Debtor proposes to pay all other claims in this class with quarterly payments over a period of five (5) years from the Petition Date.  Quarterly payments shall commence on the earlier of January 15, April 15, July 15, or October 15 following the Effective Date and shall continue quarterly thereafter, and shall include annual interest at the statutory rate.

**Class 3 - Carolina Bank**

1.  Description of Debt.  Debtor executed a promissory note in favor of Carolina Bank dated April 28, 2006 in the original amount of $1,490,000.00 that was modified October 7, 2009. The note was secured by Debtor's property at 5704-08 Seminole Avenue, Lynchburg, Virginia (the "Lynchburg Property").  Carolina Bank commenced foreclosure proceedings prior to the date of Debtor's Petition.  As of the date of the Petition, the outstanding amount owed to Carolina Bank on the note was $1,447,709.78 (not including attorney's fees).

2.  Impairment.  This class will be impaired.

3.  Treatment.  Debtor shall transfer to Carolina Bank, or its assigns, free and clear of all liens the Lynchburg Property along with any related fixtures and personal property in exchange for a stipulated credit against the outstanding amounts owed by the Debtor on the note.  Carolina Bank and its assigns shall not have any liability for, nor in any manner be responsible for, any

liabilities or obligations of the Debtor, whether *in rem* or *in personam* claims, and all creditors and claimants of the Debtor, and all persons having any interest of any nature derived from or through the Debtor, are permanently enjoined from pursuing any action against Carolina Bank after the transfer of the Lynchburg Property has been closed.  Following the transfer of the Lynchburg Property, the Debtor, Carolina Bank and the guarantors have agreed to a discounted remaining balance on the note of $450,000.00 (the "Remaining Balance") to be paid monthly on an interest-only basis at a 4% fixed rate of interest beginning on January 1, 2011 and continuing thereafter with a balloon payment for the Remaining Balance and any unpaid interest due on January 1, 2014.  In the event of a default on the Debtor's payment of the Remaining Balance, Carolina Bank shall be entitled to pursue its remedies against the guarantors.  As soon as is reasonably practicable, the Debtor shall provide Carolina Bank with copies of any plans, specifications, as built drawings, contracts, leases, warranties, surveys and other similar documents related to the Lynchburg Property.  The pending state court action against the Debtor and the guarantors shall be dismissed and the Debtor and the guarantors shall dismiss their counterclaims in such action with prejudice.  Further, the Debtor, its members and each of the guarantors on the note shall execute a general release of any and all claims against Carolina Bank.

**Class 4 – RBC Bank:**

    1. <u>Description of Debt</u>.  Debtor has two loan agreements with RBC Bank.

      a. <u>Note A</u>.  Debtor and RBC Bank entered into a loan agreement dated August 29, 2005 in the original amount of $3,670,000.00.  The loan was secured by a first deed of trust on Debtor's property in Sanford, North Carolina ( both the Ham's and Zheng Garden), Goldsboro, North Carolina, and Rocky Mount, North Carolina. $3,074,524.50 was owed as of the date of the petition. RBC has filed a proof of claim for $3,649,110.05 which includes a claim for $466,260.60 in attorneys' fees.

      b. <u>Note B</u>.  Debtor and RBC bank entered into a loan agreement dated November 22, 2006 in the original amount of $1,675,000.00.  The loan was secured by a first deed of trust on Debtor's property in Greenville, North Carolina. $1,605,997.65 was owed as of the date of the petition.  RBC has filed a proof of claim for $1,841,157.51 which includes a claim for $238,988.32 in attorneys' fees.

    2. <u>Impairment</u>.  This class will be impaired.

    3. <u>Treatment</u>.

    <u>NOTE A.</u>  The Debtor' obligation to RBC Bank shall be treated as follows:

      a.  The obligation shall be treated as a secured obligation in an amount equal to (a) all outstanding principal and interest due on the Petition Date; plus (b) costs and expenses approved by the Court pursuant to Section 506(b); less (c) any post-petition payments.

      b.  RBC Bank  shall retain its liens with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its  claim is paid in full.

c.  As of the Effective Date, interest shall accrue on this obligation at 4.00%.

d.  Payments will begin on the 15th day of the first full month following the Effective Date of the Plan.  Until the sale or lease of the Rocky Mount property, Debtor will make payments in an amount equal to 80% of the rental receipts from Debtor's property in Sanford ( both 1615 South Horner Blvd. and 1707 South Horner Blvd.) and Goldsboro net of taxes, insurance and expenses directly related to any property securing Note A and Note B.

e.  All prepayment penalties shall be eliminated.

f.  The Debtor shall maintain insurance on the collateral with RBC named as a loss payee.

g.  The Debtor shall maintain the collateral, normal wear and tear excepted.

h.  The Debtor shall pay all property taxes when due, except for taxes paid through this Plan.

i.  Throughout the period of repayment as set forth herein, it shall be an event of default if the Debtor fail to make any payment within fifteen (15) days of the due date.

j.  Debtor will market the currently unoccupied Rocky Mount, North Carolina property for lease or sale for twenty-four months after the effective date.  (1) If the property is sold, Debtor will apply the sale proceeds net of the costs of sale to Note A.  The remaining balance will be paid based upon an interest rate of 4% and a 30-year amortization. The first such payment to become due on the 15th day of the month following the date of closing.  (2) If the property is leased, interest and principal on Note A will be paid based upon an interest rate of 4% and a 30-year amortization. The first such payment to become due on the 15th day of the month following Debtor's receipt of the first rental payment on the Rocky Mount property.

k.  If the Rocky Mount property is not sold within the 24 month period, Debtor will consent to the stay being lifted and RBC proceeding with foreclosure on the Rocky Mount property only.

l.  RBC Bank will have the right to demand payment in full of Note A five years after the effective date of the plan.

NOTE B.  The Debtor's obligation to RBC Bank shall be treated as follows:

a.  The obligation shall be treated as a secured obligation in an amount equal to (a) all outstanding principal and interest due on the Petition Date; plus (b) costs and expenses approved by the Court pursuant to Section 506(b); less (c) any post-petition payments.

b.  RBC Bank  shall retain its liens with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its  claim is paid in full.

c.  As of the Effective Date, interest shall accrue on this obligation at 4.00%.

d.  All prepayment penalties shall be eliminated.

e.  The Debtor shall maintain insurance on the collateral with RBC Bank  named as a loss payee.

f.  The Debtor shall maintain the collateral, normal wear and tear excepted.

g.  The Debtor shall pay all property taxes when due, except for taxes paid through this Plan.

h.  Throughout the period of repayment as set forth herein, it shall be an event of default if the Debtor fail to make any payment within fifteen (15) days of the due date.

i.  Debtor will market the currently unoccupied Greenville, North Carolina property for lease or sale for twenty-four months after the effective date.  (1) If the property is sold, Debtor will apply the sale proceeds net of the costs of sale to Note B.  The remaining balance will be unsecured and accrue interest a rate of 4%.  Debtor will execute a promissory note in the amount of the deficiency to accrue interest at 4% per annum and to become due in full on the 15th day of the 61st month following the effective date of the plan. (2)  If the property is leased, interest and principal on Note B will be paid based upon an interest rate of 4% and a 30-year amortization.  The first such payment to become due on the 15th day of the month following Debtor's receipt of the first rental payment on the Greenville property.

k.  If the Greenville property is not sold within the 24 month period, Debtor will consent to the stay being lifted and RBC proceeding with foreclosure on the Greenville property only.

l.  RBC Bank will have the right to demand payment in full of Note B five years after the effective date of the plan.

**Class 5 - Crescent State Bank**

1.  <u>Description of Debt</u>.  There are two loan agreements with Crescent State Bank ("Crescent").

<u>Note A</u>: Debtor and Crescent entered into a Note dated May 4, 2005 in the original principal amount of $1,700,000.00 (Note number 88001367 dated May 4, 2005).  The loan was secured by a first deed of trust on Debtor's Samet Drive property in High Point, North Carolina. $1,524,272.15 was owed as of the date of the petition.

Note B: On October 25, 2007 Debtor's wholly owned single member limited liability company entered into a Note with Crescent in the original principal amount of $2,735,000.00 (Note number 88004080 dated October 25, 2007). Debtor entered into a guaranty agreement. Debtor merged with Ham's Acquisition, LLC or will complete the merger prior to the effective date. The loan was secured by a first deed of trust the property on Cone Boulevard in Greensboro, North Carolina and by a second deed of trust on Debtor's property on Samet Drive in High Point, North Carolina. $2,623,132.96 was owed as of the date of the petition.

2. Impairment. The class will be impaired.

3. Treatment. The Debtor's obligations to Crescent State Bank shall be treated as follows:

Note A

a. The obligations of both Note A and B shall be treated as a fully secured claim in the stipulated amount of $4,325,101.13 combined for both Note A and Note B; this debt shall be amortized over a period of 20 years and bear interest at the rate of five percent (5%) per annum; Debtor shall pay Crescent $28,718.19 per month on or before the 15th day of each month commencing on the first month after confirmation of Debtor's plan of reorganization;

b. Failure to make payments as specified in paragraph 3(A) above, or to pay the entire outstanding indebtedness on demand pursuant to paragraph 3(D) below, shall constitute an event of default under Notes A and B and the Deeds of Trust related thereto. In the event of such payment default, Crescent shall give written notice of default and Debtor shall have ten (10) days from the date such written notice is sent to cure said default;

c. If the Debtor defaults and fails to cure such default within ten (10) days from when written notice is sent, Crescent shall be permitted to exercise any and all available rights and remedies in the event of default provided under Notes A and B, and the Deeds of Trust that secure Notes A and B, including, without limitation, the right to foreclose on the properties of the Debtor in which Crescent holds a security interest;

d. Crescent shall have the right to demand payment in full of the entire indebtedness then outstanding on or after the fifth anniversary of the confirmation of Debtor's plan of reorganization;

e. All prepayment penalties shall be eliminated.

f. All other terms and conditions of the Notes, the Deeds of Trust that secure the Notes, and all attendant loan documents shall remain in force and effect as they were as of the date of Debtor's filing of its petition;

g. Crescent shall retain its liens with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its claim is paid in full.

h.   The Debtor shall assign to Crescent Bank any and all administrative claims, and the right to pursue same, owned to the Debtor in the bankruptcy case captioned <u>In re Ham's Restaurants, Inc.</u>, Case No. 09-09233-8-RDD (E.D.N.C. Bankr..) to the extent that those claims arise from or relate to amounts owed pursuant to that certain Lease Agreement dated October 10, 2007 between Hambone Dog Properties, LLC and Ham's Restaurants, Inc., and any amendments and addenda thereto (the "Lease") or otherwise arise from or relate to the property of the Debtor and/or Ham's Lakeside Acquisition, LLC in which Crescent State Bank holds a security interest. Notwithstanding the assignment, the Debtor shall be permitted to file any such administrative claims for the benefit of Crescent;

i.   The Debtor shall not seek to recover costs and expenses pursuant to 11 U.S.C. § 506(c) from property in which Crescent State Bank holds a security interest except to the extent that the Plan permits the Debtor to use rental proceeds that would otherwise constitute Crescent's cash collateral;.

j.   Except for adequate protection payments previously ordered, Crescent State Bank surrenders to Debtor any claim to funds in Debtor's DIP account.

<u>Note B</u>

a.   The obligations shall be treated as secured obligations in an amount equal to (a) all outstanding principal and interest due on the Petition Date; plus (b) costs and expenses approved by the Court pursuant to Section 506(b); less (c) any post-petition payments.

b.   Crescent shall retain its liens with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its claim is paid in full.

c.   As of the Effective Date, interest shall accrue at 5.00% per annum.

d.   The principal and interest shall be amortized over a period of 20 years. Payments will begin on the 15th day of the first full month following the Effective Date of the Plan.

e.   All prepayment penalties shall be eliminated.

f.   The Debtor shall maintain insurance on the collateral with Crescent named as a loss payee.

g.   The Debtor shall maintain the collateral, normal wear and tear excepted.

h.   The Debtor shall pay all property taxes when due, except for taxes paid through this Plan.

i.   Throughout the period of repayment as set forth herein, it shall be an event of default if the Debtor fail to make any payment within fifteen (15) days of the due date.

j. Crescent shall have the right to call the loan five years after the effective date of the plan.

### TERMS CONTROLLING BOTH NOTES

The total indebtedness of Debtor to Crescent State Bank is stipulated and agreed to be $4,325,101.13 on both Note A (loan number 88001367 dated May 4, 2005) and Note B (loan number 88004080 dated October 25, 2007); this debt shall bear interest at the rate of five percent (5%) per annum; Debtor shall pay Crescent State Bank $28,718.19 per month on or before the 15th day of each month commencing on the first month after confirmation of Debtors plan of reorganization;

In the event of default, Crescent State Bank ("the Bank") shall give written notice of default and Debtor shall have ten (10) days to cure said default.

### ADDITIONAL TERMS

Debtor will assign to Crescent State Bank any and all claims against Ham's Restaurants, Inc. or the Bankruptcy Estate thereof related the Samet Drive property or the Cone Blvd. property which secures the indebtedness to Crescent State Bank. Recovery net of expenses and attorneys' fees will be credited to the note.

Except for adequate protection payments previously ordered, Crescent State Bank surrenders to Debtor any claim to funds in Debtor's DIP account.

## CLASS 6 - SunTrust Bank

1. <u>Description of Debt</u>. Debtor and SunTrust Bank ("SunTrust") entered into a loan agreement dated June 28, 2006 in the original amount of $1,770,000.00. The loan was secured by a first deed of trust on Debtor's two adjoining properties located at 2001 and 2011 North Main Street, High Point, North Carolina. SunTrust filed a proof of claim evidencing an oversecured claim in the amount of $1,235,204.17 as of the date of the petition.

2. <u>Impairment</u>. This class will be impaired.

3. <u>Treatment.</u> The Debtor's obligation to SunTrust shall be treated as follows:

a. The obligation shall be treated as a secured obligation in the amount of $1,229,940.83, which represents the principal, accrued interest, reasonable fees, and reasonable attorneys' fees allowable under § 506(b) as of December 21, 2010.

b. SunTrust shall retain its liens with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its claim is paid in full.

c. On the Effective Date, the Debtor shall execute and deliver to SunTrust a promissory note in the amount of $1,229,940.83, which note shall constitute a renewal of the Debtor's obligations to SunTrust (the "SunTrust Renewal Note"). The SunTrust Renewal Note shall include, among terms: monthly payments of $9,500, commencing on January 15, 2011 and continuing each subsequent month; maturity date of March 15, 2015; interest accrual at 5.00% per annum; and all other standard provisions contained in the previous promissory note evidencing the Debtor's obligation to SunTrust.

d. Debtor will pay SunTrust Bank $9500.00 per month beginning on the 15th day of the first full month following the Effective Date of the Plan.

e. There are no prepayment penalties in standard SunTrust documents.

f. The Debtor shall maintain insurance on the collateral with SunTrust named as a loss payee.

g. The Debtor shall maintain the collateral, normal wear and tear excepted.

h. The Debtor shall pay all property taxes when due, except for taxes paid through this Plan.

i. Throughout the period of repayment as set forth herein, it shall be an event of default if the Debtor fail to make any payment within fifteen (15) days of the due date.

j. In the event of default under the terms of the SunTrust Renewal Note, the automatic stay provisions under the Bankruptcy Code shall automatically lift and SunTrust shall be entitled to exercise all state law remedies accordingly.

## Class 7 – First Citizens Bank

1. <u>Description of Debt</u>. Debtor and First Citizens Bank entered a loan agreement dated July 5, 2007 in the original amount of $385,000.00 secured by real property at 115 S. Horner Blvd. in Sanford, NC. As of the date of the petition, $228,163.61 was owed. When Debtor could not make payments, the property was sold on or about October 3,2008 to a related entity and the purchaser undertook to make payments as the same come due.

2. <u>Impairment</u>. This class will be unimpaired.

3. <u>Treatment</u>. The owner will pay the debt as it comes due.

## Class 8 - Atland Corporation

1. <u>Description of Debt</u>. Debtor and Atland Corporation (a related entity) entered a loan agreement dated July 6, 2007 secured by a second mortgage real property at 115 S. Horner Blvd. in Sanford, NC. As of the date of the petition, $93,550.16 was owed. When Debtor could not

make payments, the property was sold on or about October 3, 2008 to a related entity and the purchaser undertook to make payments as the same come due.

    2.  <u>Impairment.</u>  This class will be impaired.

    3.  <u>Treatment.</u>  The owner will pay the debt as it comes due.

**Class 9 - Kenneth R. Hoyle, Sr.**

    1.  <u>Description of Debt.</u>  Debtor and Kenneth R. Hoyle entered into a loan agreement dated September 4, 2007 in the original amount of $75,000.00 secured by real property at 229 Carthage Street in Sanford, NC.  As of the date of the petition, $48,232.59 was owed..  When Debtor could not make payments, the property was sold on or about October 3, 2008 to a related entity and the purchaser undertook to make payments as the same come due.

    2.  <u>Impairment.</u>  This class will be unimpaired.

    3.  <u>Treatment.</u> The owner will pay the debt as it comes due.

**Class 10 - RCR Marketing, LLC ("RCR")**

    1.  <u>Description of Debt.</u>  RCR occupies Debtor's property on Samet Drive in High Point, North Carolina, at 2001 North Main Street in High Point North Carolina, on Cone Boulevard in Greensboro, North Carolina, and at 1707 South Horner Boulevard in Sanford, North Carolina as a tenant of Debtor.

    2.  <u>Impairment.</u>  This class will be unimpaired.

    3.  <u>Treatment.</u>  Debtor has filed a motion to assume these leases.

**Class 11 - Uncle Yammy's**

    1.  <u>Description of Debt.</u>  Uncle Yammy's occupies Debtor's property in Goldsboro, North Carolina as a tenant.

    2.  <u>Impairment.</u>  This class will be unimpaired.

    3.  <u>Treatment.</u>  Debtor plans to file a motion to assume this lease.

**Class 12 - Zheng Garden**

    1.  <u>Description of Debt.</u>  Zheng Garden occupies Debtor's property at 1615 South Horner Boulevard in Sanford, North Carolina as a tenant.

    2.  <u>Impairment.</u>  This class will be unimpaired.

    3.  <u>Treatment.</u>  Debtor plans to file a motion to assume this lease.

**Class 13 - Brainfreeze Six, Inc.**

    1. <u>Description of Debt</u>.  Brainfreeze occupies Debtor's property at 2011 N. Main Street in High Point, NC as a tenant.
    2. <u>Impairment</u>.  This class will be unimpaired.
    3. <u>Treatment</u>.  Debtor plans to file a motion to assume this lease.

**Class 14 - BRC Deep River, LLC**

    1. <u>Description of Debt</u>.  Debtor's Samet Drive property is located within a shopping center.  This debt which was $7,167.00 at the time of the petition is for common area maintenance for Debtor's Samet Drive property which is now occupied by RCR.

    2. <u>Impairment</u>.  This class will be impaired.

    3. <u>Treatment</u>.  Debtor's share of this claim will be paid as an unsecured claim.

**Class 15 - Golden East Crossing**

    1. <u>Description of Debt</u>.  Debtor's Rocky Mount property is located within a shopping center.  This debt which was $1,086.01 at the time of the petition is for common area maintenance for Debtor's Rocky Mount property which is currently unoccupied.

    2. <u>Impairment</u>.  This class will be impaired.

    3. <u>Treatment</u>.  This claim will be paid when the property is leased or sold.

**Class 16 - General Unsecured Claims less than $10,000.00**:

    1. <u>Description of Class</u>.  This class consists of all allowed, undisputed, non-contingent unsecured claims listed in the Debtor's petition or as otherwise approved by the Court less than $10,000.00.

    2. <u>Impairment</u>.  This class will be impaired.

    3. <u>Treatment</u>.  Holders will receive 100% of the allowed claims plus interest at 4% within 60 months of the effective date of the plan.

**Class 17 - General Unsecured Claims greater than $10,000.01**:

    1. <u>Description of Class</u>.  This class consists of all allowed, undisputed, non-contingent unsecured claims listed in the Debtor's petition or as otherwise approved by the Court greater than $10,000.01.
    2. <u>Impairment</u>.  The class will be impaired.

3. <u>Treatment</u>.  Holders will receive 100% of their allowed claims.  Interest only shall be paid monthly at the rate of 4% per annum for 60 months after the effective date. Debtor will execute a promissory note in favor of each holder for the amount of the allowed claim.  Each note will become due on the 15th day of the 61st month following the effective date of the plan.

## Class 18 - Global House, Inc.

1. <u>Description of Class</u>.  Debtor and Global House, Inc. on or about September 28, 2005 entered into a line of credit agreement.  Debtor secured the loan with a junior deed of trust on three properties.  At the time of the petition, the amount outstanding on the loan was $95,000.00.

2. <u>Impairment</u>.  This class will be impaired.

3. <u>Treatment</u>.  The Debtor's obligation to Global House shall be treated as follows:

a.  The obligation shall be treated as a secured obligation in an amount equal to (a) all outstanding principal and interest due on the Petition Date; plus (b) costs and expenses approved by the Court pursuant to Section 506(b); less (c) any post-petition payments.

b.  Global House shall retain its liens with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its  claim is paid in full.

c.  As of the Effective Date, interest shall accrue on this obligation at 4.00%.

d.  The interest will accrue but will not be paid until the first day of the 61st month following the effective date.

e.  All prepayment penalties shall be eliminated.

f.  The Debtor shall maintain insurance on the collateral.

g.  The Debtor shall maintain the collateral, normal wear and tear excepted.

h.  The Debtor shall pay all property taxes when due, except for taxes paid through this Plan.

i.  Throughout the period of repayment as set forth herein, it shall be an event of default if the Debtor fail to make any payment within fifteen (15) days of the due date.

j. Global House will have the right to call the note after five years.

## Class 19 - Unsecured Claims of Related Persons and Entities

1. <u>Description of Class</u>. Any person holding any direct of indirect ownership interest in Debtor or any entity having any direct or indirect common ownership listed in Debtor's petition or as otherwise approved by the Court will be treated as a related party and is not eligible to be treated in any other class.

2. <u>Impairment</u>. The class will be impaired.

3. <u>Treatment</u>. Holders will receive a promissory note in the amount of their claim as allowed; said notes will bear no interest until the first day of the 61st month after the effective date of the plan; thereafter, the notes will accrue interest at 4% per annum. Each note will become due on the 15th day of the 65th month following the effective date of the plan or when all unsecured creditors have been paid in full, whichever shall first occur.

**Class 20 - Equity Holders**

1. <u>Classification</u>. This class consists of the Debtor's members:

| | |
|---|---|
| Clyde Atkins | 1/3 ownership |
| John Daniel | 1/3 ownership |
| Global House, Inc. | 1/3 ownership |

2. <u>Impairment</u>. This class will be unimpaired.

3. <u>Treatment</u>. Upon confirmation of the Debtor's Plan, the equity security holders shall retain their ownership interests.

## IV.  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except as specified herein, all contracts **other than contracts specifically addressed in the plan** which exist between the Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or heretofore been approved by Orders of the Court are hereby specifically rejected; provided, however, that this provision is not intended to reject and does not reject any agreement for the renewal or the extension of any loan or funds, presently binding and in effect between the Debtor and any secured creditor. Any person with a Claim arising from such rejection shall be deemed to hold a general unsecured claim and shall file a proof of claim within sixty (60) days of the Effective Date or be forever barred from asserting any Claim relating to such rejection.

## V.  MEANS OF IMPLEMENTATION AND EXECUTION OF PLAN

A. The Debtor proposes to make payments under the Plan from the income derived from the continued operation of its shipping business and from the sale of real and personal property.

B. <u>Surrender of Property of the Estate</u>. All properties surrendered by the Debtor in accordance with this Plan shall be valued at an amount 1) agreed by the Debtor and the specific

secured creditor on said surrendered property, or 2) by the Bankruptcy Court pursuant to § 506(a) of the Code.

C. <u>Sale Free and Clear of Liens</u>.  All real and personal property owned by the Debtor that will be sold pursuant to this Plan will be sold free and clear of all liens, encumbrances, claims, interests, or other obligations.  In order to expedite the sale process, provide clear title to the properties sold, and satisfy certain anticipated requirements of title insurance companies providing title insurance to purchasers, simultaneous with the entry of the Order Confirming Plan, the Court will enter a free and clear order, which shall provide that all sales will be free and clear of all liens, interests, and other claims or interests.  All real or personal property sold by the Debtor shall be sold pursuant to the free and clear order to be entered.  No further motions related to the sales of property shall be required; provided however, the Debtor may file such motions and seek such orders to the extent needed to provide reasonable comfort or accommodation to the purchaser(s) or to specify the method of distribution of the sales proceeds.

D. <u>Method of Distribution</u>.  The Reorganized Debtor shall make all disbursements to creditors under the Plan.  Upon the sale of the real or personal property proposed to be sold by this Plan that is encumbered by liens in favor of creditor(s), the liens secured by such property shall attach to the net proceeds of sale remaining after payment of all reasonable and ordinary closing costs, (including but not limited to ad valorem taxes, commissions, and any other costs permitted under § 506(c) of the Code), and shall be paid to lienholders in accordance with the priorities of the liens.

E. <u>Procedure for Deficiency Claims</u>.  Any creditor asserting a deficiency claim shall file a proof of claim within the time period specified in the treatment for such creditor or within sixty (60) days of the Effective Date whichever is longer, or be forever barred from asserting any deficiency claim and such obligation shall be deemed paid in full.  In the event the Debtor obtains its Final Decree prior to the deadline for filing such deficiency claim, such creditor shall inform the Disbursing Agent of such deficiency claim within the same time period.  In such event, a proof of claim form shall not be required, but the creditor shall provide notice of such deficiency claim to the Disbursing Agent in a writing containing the amount of such claim and an itemization of such claim.

F. <u>Claims Paid by Third Parties</u>.  To the extent a claim holder receives payment in full or in part on account of such claim from a party that is not the Debtor, such creditor shall, within two (2) weeks therefore, inform the Debtor of such payment, and such creditor's claim shall be reduced accordingly for purposes of distribution under this Plan.

G. Distributions under the Plan shall be made on the Distribution Date; provided however, that Court approved professionals may be paid as such fees and expenses are approved by the Court.  Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day.

H. <u>De Minimis Distributions</u>.  No distribution of less than fifty dollars ($50.00) shall be required to be made to any holder of an allowed unsecured claim.  Instead, the Debtor shall have the option of retaining such funds to be distributed at the time of the final distribution in accordance with the Plan.

I.  Unclaimed Property.  If any distribution remains unclaimed for a period of 90 days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim and the Disbursing Agent shall not attempt to make any further distribution of such holder of the claim.  Undistributed property shall be returned to the Debtor for distribution in accordance with the Plan.

J.  Preservation of Avoided Transactions for the Benefit of the Estate.  All transactions avoided or otherwise set aside pursuant to §§ 544, 547, 548, and/or 549, if any, shall be preserved for the benefit of the Estate pursuant to § 551 and applicable case law.  Funds received from such transactions shall be distributed to creditors according to the priorities of the Code.  In the case of any lien that has been avoided which encumbered certain properties of the Debtor and has since been avoided, the lien shall remain on the public record and shall remain an encumbrance upon the real property.  However, all distributions made towards such deed of trust shall be distributed not to the named beneficiary of such deed of trust, but shall instead be paid to the Disbursing Agent for distribution to creditors.

K.  Exemption from Transfer Taxes.  Pursuant to § 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including without limitation, deeds, or bills of sale or assignments of personal property executed in connection with any of the transactions contemplated under the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.  Each of the relevant state or local governmental officials or agents will forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment consistent with the applicable provisions of this Plan.

L.  Proceedings Against Guarantors.  As long as the Debtor remains current on its obligations to creditors holding guaranty claims against one or both of the Debtor's officers, creditors shall be prohibited from pursuing any action against other entities or guarantors to collect on their claims.  Upon the failure of the Debtor to make payments to a creditor, such payment not being cured within ten days of its due date, unless another deadline is provided for such creditor, creditors shall be entitled to resume and/or commence any proceedings against guarantors according to their rights and remedies under the guarantor documents. Unless specifically excepted in a creditor's treatment, the creditor agrees that if the Debtor makes all required Plan payments to said creditor, the agreements giving rise to any claims against other entities or guarantors shall be modified such that such claims are extinguished.

M.  The Debtor will execute and deliver all documentation to the Bankruptcy Court and to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Bankruptcy Code.

N.  The Debtor shall take such other action as necessary to satisfy the other terms and requirements of the Plan and the Bankruptcy Code.

O.  Except as expressly stated in the Plan, or allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code.  No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.

P.  Confirmation of this plan shall constitute a finding that the Debtor does not waive, release, or discharge, but rather retains and reserves any and all pre-petition claims and any and all post-petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548, and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of the Debtor's Plan. Further, the Debtor retains all rights to assert and pursue all claims under 11 U.S.C. § 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

Q.  Administrative claims unpaid on the Effective Date will be paid from funds on hand or as the parties otherwise agree.

R.  All objections to claims, fee applications, and adversary proceedings will be filed with the Court within 60 days of the Effective Date; provided however, that the Debtor retains the right to object or otherwise pursue any claims against secured creditors relating to the payoff and/or satisfaction of their secured claims.

S. Debtor intends to use the services of John Kelley as accountant at his pre-petition rate of $250/month.

T.  <u>Procedure for Payment of Professional Fees</u>.  Current Court approved professionals shall not be subject to the fee application process for services rendered post-confirmation in furtherance of implementation of the confirmed Plan.

## VI.  SIMILAR TREATMENT FOR EACH CLAIM WITHIN A CLASS

The claims stated herein, by modification, Court Order, or other legally appropriate manner, might be modified throughout the course of payment under this Plan.  The Debtor, upon full payment as called for under the notes and deeds of trust, shall be entitled to have the note marked paid and satisfied and the deed of trust canceled as a matter of record, by the Trustee, or by appropriate application to this Bankruptcy Court, and upon a showing that the full amount of the monthly payments were made by the Debtor.

## VII.  PROVISIONS GOVERNING DISTRIBUTIONS

A. <u>Delivery of Distributions in General</u>.  Distributions to holders of allowed claims shall be made:  (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtor after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or  (ii) is not available, (iii) at the addresses reflected in the Debtor's schedules of liabilities.

B. <u>Distribution Dates</u>.  It is the intent of this Plan that the distribution shall occur as early as practicable following the Effective Date.

## VIII.  <u>ACCEPTANCE OR REJECTION OF PLAN:</u><br><u>EFFECT OF REJECTION BY IMPAIRED CLASS</u>

A. <u>Each Impaired Class Entitled to Vote Separately</u>.  Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B. <u>Acceptance by a Class of Creditors</u>.  Consistent with § 1126(c) of the Bankruptcy Code, and except as provided in § 1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more that one-half (½) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

C. <u>Claimants Entitled to Vote</u>.  Holders of impaired claims shall be entitled to vote if:

1.  Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed.  The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's schedules;

2.  Such claim has been filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018;

3.  Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

4.  Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

D. <u>Confirmation Hearing</u>.  The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E. <u>Acceptances Necessary to Confirm the Plan</u>.  At the hearing of confirmation of the Plan, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class.  Under § 1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (½) in number vote to accept the Plan.  Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor was liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

F. <u>Confirmation of Plan Without Necessary Acceptances</u>.  The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes.  In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class.  In the event that any class votes against the plan, the Debtor hereby requests and moves the Court under the provisions of this Plan entitled "Cramdown," for confirmation pursuant to the "cramdown" provisions of § 1129(b) of the Bankruptcy Code.  In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with § 1129(b)(2)(A).

## IX.  "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes.  The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any secured creditor, at a valuation hearing under § 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## X.  EFFECT OF CONFIRMATION

A.  Except as otherwise provided in the Plan, the confirmation of the Plan vests all of the property of the estate in the Debtor.

B. <u>Injunction</u>.  As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a claim, equity interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to § 1141 of the Code, are enjoined from taking any of the following actions on account of any such claims, equity interests, Debtor or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance;

(iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation order. Notwithstanding the foregoing, the Plan does not release or waive any claims it may have against any party in interest.

## XI.  RELEASE OF TITLE TO PROPERTY

A. <u>Vehicles</u>.  Upon the satisfaction or other discharge of a security interest in a motor vehicle, mobile home, or in any other property of this estate in bankruptcy for which the certificate of title is in the possession of the secured party, the secured party shall within ten (10) days after demand and, in any event, within thirty (30) days of receipt of the payment in full pursuant to the Plan, execute a release of its security interest on the said title or certificate, in the space provided therefore on the certificate or as the Division of Motor Vehicles prescribes, and mail or deliver the certificate and release to the Debtor.  Confirmation of this Plan shall impose an affirmative and direct duty on each such secured party to comply with the provision.  This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this Plan.  Such an enforcement proceeding may be filed by the Debtor in this case either before or after the closing of this case.  The debtor(s) specifically reserve the right to file a motion to reopen this case under Section 350 of Title 11 of the United States Code to pursue the rights and claims provided for herein.

B. <u>Real Property</u>.  Pursuant to N.C.G.S. § 45-36.9, upon the satisfaction or other discharge of a security interest in real property for which a creditor holds a properly secured mortgage, the secured party shall within thirty (30) days after demand or within thirty (30) days of payment in full pursuant to the Plan, submit for recording with the Office of the Register of Deeds for the applicable County a satisfaction of its security interest and mail or deliver the recorded satisfaction document or documents to the Debtor.  The failure of any such party to comply with this section shall  results in the imposition of statutory damages of $1,000.00, actual damages, costs and legal fees as provided for by § 45-36.9(c) of the N.C. General Statutes.  Confirmation of this Plan shall impose an affirmative and direct duty on each such secured party to comply with this provision.  This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this plan.  Such an enforcement proceeding may be filed by the Debtor in this case either before or after the closing of this case.  The Debtor specifically reserves the right to file a motion to reopen this case under § 350(b) of Title 11 of the United States Code to pursue the rights and claims provided for herein including all remedies for damages and attorney fees under applicable State and Federal statutes.

## XII.  APPLICATION OF PLAN PAYMENTS

A. All payments made by the Debtor shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall be applied to principal and interest on a monthly basis according to the amortization schedule

proposed for each creditor.  In the event that a creditor is entitled to costs and/or attorneys fees post-petition under § 506(b) of the Code, such creditor must file an application in accordance with the Code and/or Bankruptcy Rules pertaining to approval of costs and/or attorney fees prior to such costs and/or attorneys fees becoming part of the creditor's allowed claim.  Confirmation of the Plan shall impose an affirmative duty and legal obligation on the holders and/or the servicers of any claims secured by liens, mortgages and/or deeds of trust to apply payments in the manner set forth in the Plan in accordance with § 524(i).

B.  Confirmation of the plan shall impose a duty on the holders and/or servicers of claims secured by liens on real property to apply the payments received from the Debtor to the month in which they were made under the plan or directly by the Debtor, whether such payments are immediately applied to the loan or placed into some type of suspense account and to otherwise comply with 11 U.S.C. § 524(i).

# XIII.  RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of §§ 105(a) and 1127 of the Code and for, without limitation, the following purposes, inter alia:

1.  to determine any and all objections to the allowance of claims and/or interests;

2.  to determine any and all applications for allowance of compensation for periods prior to or after the Confirmation Date;

3.  to determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any claim resulting therefrom;

4.  to determine all controversies and disputes arising under or in connection with the Plan;

5.  to determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date;

6.  to effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the Estate;

7.  to determine such other matters and for such other purposes as may be provided for in the confirmation order;

8.  to determine all disputes regarding property of the estate;

9.  to establish and adjust procedures for the orderly administration of the estate;

10.  to determine matters that are subject to proceedings duly removed to the Bankruptcy Court; and

11.  to replace the Debtor-in-Possession with a Trustee for good cause shown.

## XIV.  MISCELLANEOUS PROVISIONS

A.  <u>Survival of Terms</u>.  The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

B.  <u>Successors Bound.</u>   This Plan shall on the Consummation Date be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Debtor, and the holders of claims and interests.

C.  <u>Controlling Law</u>.  This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the United States Bankruptcy Code and the Rules promulgated thereunder.

D.  <u>Further Assurance.</u>  If at any time, the Debtor shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

E.  <u>Incorporation of Disclosure Statement</u>.  All the terms and conditions of the Disclosure Statement are incorporated herein by reference.

(the rest of this space left intentionally blank)

Respectfully submitted, this the 16th day of December, 2010.


/s/ Nigle B. Barrow, Jr.
Nigle B. Barrow, Jr.
Attorney for Debtor, Hambone Dog Properties
NC State Bar No. 7597
P. O. Box 2714
Raleigh, NC  27602-2714
Telephone: 919-834-2116


HAMBONE DOG PROPERTIES, INC.
By:  /s/ Clyde K. Atkins
        Clyde K. Atkins, Member Manager